UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 05-29-HRW

ROY F. HALL,                                                    PLAINTIFF,

V.                    **MAGISTRATE JUDGE'S**
                      **REPORT AND RECOMMENDATION**

AK STEEL CORPORATION, and
UNITED STEELWORKERS OF AMERICA,
DISTRICT 8 - LOCAL UNION # 1865, and
TIM IMES, President of Union #1865,                            DEFENDANTS.

\*   \*   \*   \*   \*   \*

The instant matter is one brought by the Plaintiff, Roy F. Hall [Hall], claiming back-pay from AK Steel Corporation after he was laid off on December 31, 1993, as part of a reduction in workforce. [AK.]  He brings this claim against AK alleging that he is entitled to, but has not been given the proper amount of back-pay for 1994 and 1995. [Record No. 1.]  In addition, Hall alleges that the United Steelworkers of America - District 8- Local Union #1865 [Union] breached a duty of fair representation in failing to secure the proper award of back-pay from AK on his behalf. [Record No. 1.]

The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) to issue a report and recommendation concerning Defendants' Motions for Summary Judgment.  [Record No. 53.] For the reasons set forth below, it will be recommended that Defendants' Motions for Summary Judgment [Record Nos. 46, 48.] be granted.

FACTUAL BACKGROUND

During the times relevant to this claim, Hall was employed at AK's Ashland Works as a

1

"track walker." [Record No. 45, p. 79.]  He described this job as being very physically demanding and required lifting heavy rails, driving spikes with an 11-pound track hammer, frequent climbing, frequent shoveling, constant bending and pulling spikes, and considerable walking. [Record No. 45, pp. 133-35.]  As part of a reduction in workforce by AK, he was laid off from work effective December 31, 1993.

In April, 1994, Hall was recalled to work by AK with instructions to report to the plant hospital for a return to work physical and drug screen. [Record No. 47, Exh. 3, p. 1; Record No. 51, Exh. 1, para. 19.]  Upon evaluation by Dr. William Short, Hall was restricted to no lifting over 25 pounds, no climbing, no shoveling, and no bending.  [Record No. 43, pp. 7-13.]  Under these restrictions AK refused to return Hall to work, explaining that Hall was ineligible for his prior or any available position. [Record No. 47, Exh. 3, p. 2.]

Hall testified regarding his physical condition at this time, and stated that he experienced problems with his neck and shoulder, and had been involved in a car accident which exacerbated his left shoulder problems. [Record No. 45, pp. 83-86.]

Hall was again recalled to work in May, 1995, and directed to report to a plant physician for a return to work physical. [Record No. 47, Exh. 3, p. 2; Record No. 51, Exh. 1, para. 19.].  On June 21, 1995, Hall was evaluated by Dr. Short, who placed him under restrictions of no lifting over 50 pounds, no shoveling, no climbing, no reaching or working above his shoulder, and no fine manipulation with his left hand.  [Record No. 43, pp. 13-17.]  Hall's family physician, Dr. Shufflebarger, recommended similar restrictions including no lifting over 50 pounds, intermittent lifting, bending, and squatting of no more than two hours per day; no pushing or pulling; no fine manipulation with his left hand, and no work above his shoulders. [Record No. 47, Exh. 3, p. 3.]

2

Based upon these recommendations, Hall remained ineligible for his previous position or any available position with AK, and was not returned to work.   [Record No. 47, Exh. 3, p. 3.]

Hall retired from AK effective December 31, 1995.  [Record No. 45, p. 72.]  The Union filed a grievance on behalf of nearly thirty retirees including Hall, claiming that the retirees were entitled to back-pay from AK. [Record No. 44 p. 12.]  The matter went to arbitration in 1999, where it was determined that employees such as Hall who were laid off after August 1, 1993 were entitled to receive back-pay to satisfy monies they would have earned had the lay-off not occurred. [Joseph Decision.]

Following the Joseph Decision, the Union informed Hall that the Arbitrator had ruled in his and the Union's favor. [Record No. 44, p. 20.]  Hall attended a meeting at the Union Hall, where he was requested to bring in a copy of his 1994 income tax return in order to calculate the amount of back-pay to which he was entitled under the arbitrator's decision. [Record No. 45, p. 101.]  In his ruling, the Arbitrator established a formula to calculate the proper back-pay by multiplying 40 hours of pay per week at a standard hourly wage, by the period of layoff, and then reducing the product by earnings from other employment and by other benefits received during the layoff, including unemployment compensation benefits, supplemental unemployment benefits, and holiday pay. [Record No. 47, Exhibit 2, p. 12.]  According to Hall, it took him nearly a year to retrieve the requested tax information from the IRS. [Record No. 44, p. 26; Record No. 45, p. 102.]  However, after obtaining a copy of his 1994 IRS form 1040, he supplied the document to the Union and believed the Union would process his back-pay claim. [Record No. 45, pp. 107-08.]   He subsequently went to the Union Hall three to five times, but alleges to have been denied the opportunity to speak with the Union representative. [Record No. 45, pp. 109-110.]

3

Sometime prior to 2003, the Union representative held a meeting of affected employees to discuss the calculation of pay and processing of back pay claims. Hall described this meeting as a "farce" and left before the meeting took place, telling the company representative and union representative to call him "when they became serious about a meeting." [Record No. 44, pp. 37-40; Record No. 45, p. 117.]

Sometime after the meeting but before 2003, Hall went to the Union Hall and asked for the telephone number of the Union's international representative. [Record No. 44, pp. 50-51, 54.] At that time Hall stated that he did not trust anyone in the local, specifically the Union representative. [Record No. 44, pp. 50-51, 54.] Hall testified in his deposition that the Union representative allegedly heard Hall and came into the room, approached Hall nose to nose and, while flanked on each side by another individual, pounded his chest, displayed his fists in the air and remarked to Hall "come on, come on." [Record No. 44, pp. 47-54.] Hall testified that he felt a little frightened. [Record No. 44, p. 53.] That was his last contact with AK or the Union. [Record No. 44, pp. 55, 57.]

Hall's award for back-pay was calculated to be $1,523.84. This amount was based upon the period of lay-off beginning December 31, 1993, less paid vacation time, less state unemployment benefits and supplemental unemployment benefits until the time he was recalled to work in April 1994, but found to be medically ineligible based upon the restrictions of Dr. William Short.

On January 13, 2005, Hall filed his Complaint in the instant matter pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, alleging that AK failed to pay the correct amount of back pay for 1994 and 1995 pursuant to the Joseph Decision. In addition, Hall alleges that the Union breached a duty of fair representation by failing to obtain the appropriate monies due

under the collective bargaining agreement and the Joseph Decision.

All parties agree that Hall is entitled to an award of back pay for some period of time between December 31, 1993, the date of his lay off and his retirement on December 31, 1995. However, they dispute the amount due. The dispute centers around whether and for what period of time following December 31, 1993, Hall was ineligible for continued employment due to his failure to medically qualify for return to work, and whether during that time he was the recipient of other benefits.

The Defendants move for summary judgment in this matter on several grounds. AK alleges that it is entitled to summary judgment since Hall received the correct amount of back-pay to which he was entitled under the Joseph Decision. In addition, AK argues that Hall's claim herein is time barred by the six month statute of limitations found in 29 U.S.C. § 160(b). [Record No. 47.] The Union makes a similar statute of limitations argument, but also contends that the Plaintiff has not created a question of fact regarding the Union's alleged breach of its duty to fairly represent the Plaintiff. [Record No. 48.]

<u>STANDARD OF REVIEW</u>

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material

fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the moving party has carried its burden under Rule 56(c), its opponent must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  While the court must view all facts in the light most favorable to the non-moving party and give him or her the benefit of all reasonable inferences that can be drawn from the facts, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), the non-moving party cannot avoid summary judgment merely by resting on the pleadings, see Celotex, 477 U.S. at 324. Instead, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587.  Thus, where the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  Id. at 586-87.

ANALYSIS

The parties present several issues through their motions in this matter.  The first issue is whether the instant action is barred as being filed outside the applicable period of limitations.  For the reasons stated below, the Court finds that it was untimely filed.  The remaining issues concern whether AK properly calculated an award of back-pay for Hall, and whether the Union breached its duty of fair representation in failing to secure the proper back-pay award.  For the reasons stated below, the undersigned is of the opinion that there is no question of fact regarding whether the award was properly calculated, and therefore no question of fact regarding whether the Union breached its duty of fair representation.  For these reasons, the undersigned will recommend that the Defendants' motions for summary judgment be granted.

The first issue addressed will be whether the above-styled action was properly filed within

6

the applicable period of limitations.  It is undisputed by the parties that the instant matter,  a claim for breach of the duty of fair representation against a union, is governed by the 6-month statute of limitations found in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b).

In his complaint, Hall alleges that the Union breached its duty of fair representation when it failed to obtain the appropriate sums due Plaintiff under the parties collective bargaining agreement, and Joseph decision. [Record No. 1, Complaint, para 9.]  Hall alleges that AK failed to pay sums due under the same authority. [Record No. 1, Complaint, para 10.]  The defendants argue that a claim such as that brought by Hall accrues when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation. McCreedy v. Local Union No. 971, UAW, 809 F.2d 1232, 1236 (6th Cir. 1987); Adkins v. International Union of Elec. Radio & Mach. Workers, 769 F.2d 330, 335 (6th Cir. 1985).  The instant action presents no evidence that the calculation of benefits was tendered to Hall prior to July 29, 2004, when Plaintiff's counsel received a letter from the Greviance Committee chairman enclosing a copy of the back pay settlement for consideration.  However, Hall testified that after supplying the Union with a copy of his IRS form 1040  he went to the Union Hall three to five times, but alleges to have been denied the opportunity to speak with the Union representative. [Record No. 45, pp. 109-110.]  In addition, he later attended a meeting of affected employees to discuss the calculation of pay and processing of back pay claims.  Hall described this meeting as a "farce" and left before the meeting took place, telling the company representative and union representative to call him "when they became serious about a meeting." [Record No. 44, pp. 37-40; Record No. 45, p. 117.]       Finally, after the meeting but before 2003, Hall went to the Union Hall and asked for the telephone number of the Union's international representative since he did not trust anyone in the local, specifically the Union

7

representative. [Record No. 44, pp. 50-51, 54.]  Hall testified in his deposition that the Union

representative allegedly heard Hall and came into the room, approached Hall nose to nose and, while

flanked on each side by another individual, pounded his chest, displayed his fists in the air and

remarked to Hall "come on, come on." [Record No. 44, pp. 47-54.]  Hall testified that he felt a little

frightened. [Record No. 44, p. 53.]

In response to the Defendants' motions for summary judgment, Hall tenders two affidavits,

one of which states:

> 2) During that year [following obtaining his IRS 1040] and subsequent years, the
> Union had ample (much more than enough) time and countless oppertunities [sic] to
> investigate futher [sic] my own claims and descriptions of what happened during the
> years of 1994 & 1995. —  They steadfastly and determindly [sic] and repeatedly
> refused to do so, or even to talk to me any futher [sic] about the matter.

> 3)  Any active member of either the Union or the company, then or now, knows I had
> absolutely no chance of negotiating with the company on any matter concerning the
> Joseph Decision without the support and compliance with, of local 1865 officials. –
> They all (1865) refused to do so, and as I stated before, refused to talk to me at all
> concerning the matter.

[Record No. 51, Exh. 2.]

Although the record does not reveal a communication regarding the calculation of back-pay

prior to July, 2004, the record is replete with Hall's own description of evidence that would lead a

reasonable person to believe that he was not being fairly represented by the Union.  This was

manifest no later than the end of 2003, according to Hall. [Record No. 44, pp. 47-57.]  Therefore,

the six month statute of limitations in this matter began to run prior to 2003 as evidence existed

which would lead a reasonable person to discover acts constituting the alleged violation, and the

action was filed in January 2005 is time barred.

Next is the issue of whether the award of back-pay was properly calculated.  Intertwined with

this is whether the Union breached its duty of fair representation in somehow failing to secure the proper award of back-pay for Hall.

Whether the back-pay calculation is correct involves two inquiries: 1) Was Hall ineligible for back-pay because of medical reasons, and 2) Did Hall receive Supplemental Unemployment Benefits [SUB] pay during the years following his lay-off.  Hall concedes that if he was ineligible for medical reasons or if he in fact received the SUB pay then he is entitled to nothing. [Record No. 51, Exhibit 2, para. 12.]  As discussed below, the undersigned finds that the Plaintiff has failed to come forward with evidence to show that a question of fact exists regarding either issue, and the Defendants are therefore entitled to summary judgment.

The uncontradicted medical evidence of record establishes that as early as April 1994, Hall was placed under restrictions and limitations which rendered him ineligible for return to work with AK in his prior or any other available position. In addition, Hall has no explanation why his own treating physician, Dr. Shufflebarger places restrictions and limitations on him on June 14, 1995 similar to those of Dr. Short.  There being no evidence to contradict this assessment of his physical condition during the relevant time period.  As such he has failed to create a question of fact regarding his physical ability and therefore his eligibility for work at the times material to this matter.

The second issue involves whether Hall received SUB pay during 1994.  If so, then the benefits would be deductible from the award of back-pay.  The defendant, AK has produced tax records and testimony by affidavit that Hall received SUB pay during 1994.[Record No. 47, Exhibit 3.]  Hall counters this testimony by merely stating that he did not receive SUB benefits. [Record No. 51, Exhibit 1, para. 3, 4, & 7. ]  However, Hall states that "This employee has only the word of

union local 1865 and the AK Steel Corp. as to the specific dates of any State Unemployment Compensation and/or any Supplementary [sic] Unemployment Benefits received during the year of 1994. (Via documents supplied by both.)" [Record No. 51, Exhibit 1, para. 9.]   In light of the documentary evidence of record in the matter, Halls denial of receipt of SUB pay when he has no evidence to counter the documentary evidence produced by the Defendants does nothing more than perhaps create a metaphysical doubt as to the material facts.   Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Such a doubt is not sufficient to create a question of fact when faced with a summary judgment motion.

Therefore, the court finds that Hall has not come forward with "specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587.  The defendants are entitled to summary judgment on the Plaintiff's claims.


<u>CONCLUSION</u>

Accordingly, and for the reasons provided above, it is hereby recommended that Defendants' Motions for Summary Judgment [Record No. ] be granted.

Specific objections to this Report and Recommendation must be filed within ten (10) days from the date of service thereof or further appeal is waived.  United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).  A party may file a response to another party's objections within ten (10) days after being served with a copy thereof.  28 U.S.C. § 636(b); Rule

72(b), Fed. R. Civ. P.

This the 15th day of February, 2007.



Signed By:

*Edward B. Atkins*

United States Magistrate Judge

11